1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

QUINN R. AMARO,

       Petitioner,

   v.

HECTOR A. RIOS, JR.,

       Respondent.

Case No. 1:11-cv-00234-SKO-HC

ORDER DENYING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 11) AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT

    Petitioner is a federal prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on April 14, 2011, and on behalf of Respondent on August 25, 2011. Pending before the Court is the first amended petition (FAP), filed on March 25, 2011.  Respondent filed an answer on December 27, 2011, with supporting exhibits.  Although the time for filing a traverse

1

has passed, no traverse has been filed.

I.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Petitioner, who is serving a sentence imposed for a federal offense, alleges that the prison authorities incorrectly calculated his release date in violation of federal law.  Because Petitioner is complaining of the manner in which the Federal Bureau of Prisons (BOP) or United States Parole Commission (USPC) has executed his sentence, this Court has subject matter jurisdiction over the petition pursuant to 28 U.S.C. § 2241, which provides that relief by way of a writ of habeas corpus extends to a person in custody in violation of the Constitution of laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

When Petitioner filed the petition, Petitioner was an inmate of the United States Penitentiary at Atwater, California (USPA), which is located within the territorial boundaries of the Eastern District of California.  (Doc. 1, 1.)  Petitioner named as Respondent the warden of USPA and thus named a respondent with the power to produce the Petitioner.  See, Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95 (1973); Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).  The Court thus has jurisdiction over the person of the Respondent pursuant to 28 U.S.C. §§ 2241(a) and 84(b).

II.   Background

Petitioner contends that his "two-thirds release date," or mandatory parole date, which had previously been calculated to be April 10, 2011, on the basis of a sentence of thirty (30) years, was erroneously re-calculated by the BOP to be April 10, 2101, on the basis of 120 years.  Petitioner alleges that this calculation is contrary to the Youth Corrections Act (YCA) and the sentence imposed by the sentencing court, and he seeks a hearing before the USPC as a remedy.  (FAP, doc. 11, 3-7.)  Respondent argues that the FAP is subject to dismissal because Petitioner has failed to exhaust available administrative remedies and is subject to denial because Petitioner's mandatory parole date has been properly computed.

With respect to Petitioner's four murder convictions, on August 27, 1981, the United States District Court for the Southern District of California sentenced Petitioner "on each of counts 5, 6, 7 and 8 of the superseding Indictment consecutively" to life imprisonment. (Doc. 29-1, 2.)  Petitioner was also sentenced to a term of fifty (50) years imprisonment on count 1 for conspiracy to commit murder, to be served consecutively to the life sentences imposed on counts 5, 6 ,7, and 8.  (Id.)  The sentencing court later modified the judgment to provide for the fifty-year term imposed on the conspiracy count to run concurrently with the four life sentences, but the consecutive terms for each of the four murders were not affected by the modification.  (Doc. 29-6, 2.)

Petitioner received numerous reviews by the USPC with respect to his mandatory parole date.  A memorandum dated October 6, 2010, to the USPC Commissioner from USPC Case Services Administrator Deirdre Jackson reflects that while conducting a case review of

3

Petitioner's co-defendant, legal staff at the USPC learned that the BOP had initially miscalculated Petitioner's projected mandatory release date to be April 10, 2011, by treating the four life sentence terms as running concurrently, rather than consecutively. The memorandum indicated that the correct mandatory release date is April 10, 2101.  The memorandum recommended a special parole reconsideration hearing, which was twice scheduled but waived by Petitioner due to a lack of representation, and then followed by notification sent in April 2011 to Petitioner that the hearing before the USPC would be scheduled as soon as Petitioner notified them that he had secured representation.  (Ray Decl., doc. 29, ¶¶ 2-5, 12-17, attchmts. 10-16.)

III.  <u>Failure to Exhaust Administrative Remedies</u>

A.  <u>Background</u>

Petitioner admits he received notice of the change of the release date on October 19, 2010, and he learned that it had occurred at the request of the USPC, which had reviewed the case of a co-defendant and instructed the BOP to change Petitioner's release date to "April 10, 2101."  Petitioner admits that in March 2011 he waived a hearing before the USPC because he was not represented by counsel; he was directed to contact the USPC as soon as he had representation in regard to a hearing set for November 2011.  (FAP 3-4.)

Petitioner was informed of his failure to allege exhaustion of administrative remedies in this Court's order dismissing Petitioner's originally filed petition.  (Doc. 9, filed Feb. 24, 2011.)  On April 6, 2011, Petitioner initiated within the prison system a request for an administrative remedy in which he claimed

4

that the Youth Corrections Act (YCA) Coordinator at FCI Englewood
had failed to "guide" BOP and USPC staff concerning their
programming responsibilities relative to the YCA with respect to his
sentence.  Prison authorities responded that Petitioner's mandatory
release date had been recalculated because the BOP originally had
miscalculated the date based on a failure to appreciate the
consecutive nature of Petitioner's multiple life terms for the four
murders.

Petitioner then appears to have changed the apparent focus of
the grievance to a failure of guidance more generally with respect
to YCA programming.  (Decl. of Jennifer Vickers, BOP paralegal
specialist, doc. 30; docs 30-2 through 30-4.)  This administrative
appeal was denied.

Respondent concedes that Petitioner has exhausted his
administrative remedies with regard to the issue raised in
Administrative Remedy ID Numbers 635466-F1, 635466-R1 and 635466-A1.
Respondent argues, however, that this programming issue is not
related closely enough to the issue Petitioner raises in this
Petition for Petitioner to be deemed to have exhausted his
administrative remedies.

B.  Analysis

As a "prudential matter," federal prisoners are generally
required to exhaust available administrative remedies before
bringing a habeas petition pursuant to 28 U.S.C. § 2241.  Huang v.
Ashcroft, 390 F.3d 1118, 1123 (9th Cir. 2004) (quoting Castro-Cortez
v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)); Martinez v. Roberts,
804 F.2d 570, 571 (9th Cir. 1986).  The exhaustion requirement
applicable to petitions brought pursuant to § 2241 is judicially

created and is not a statutory requirement; thus, a failure to exhaust does not deprive a court of jurisdiction over the controversy.  <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir. 1990), <u>overruled on other grounds,</u> <u>Reno v. Koray</u>, 515 U.S. 50, 54-55 (1995).  If a petitioner has not properly exhausted his or her claims, a district court in its discretion may either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. <u>Brown v. Rison</u>, 895 F.2d at 535.

Exhaustion may be excused if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or would cause irreparable injury.  <u>Fraley v. United States Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993); <u>United Farm Workers of America v. Arizona Agr. Emp. Rel. Bd.</u>, 669 F.2d 1249, 1253 (9th Cir. 1982).  Failure to exhaust administrative remedies may be excused where an official policy of the BOP requires denial of the claim. <u>Ward v. Chavez</u>, 678 F.3d 1042, 1045-46 (9th Cir. 2012).  Factors weighing in favor of requiring exhaustion include whether 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, 2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and 3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.  <u>Noriega-Lopez v. Ashcroft</u>, 335 F.3d 874, 880-81 (9th Cir. 2003) (citing <u>Montes v. Thornburgh</u>, 919 F.2d 531, 537 (9th Cir. 1990)).

Respondent contends that the Ninth Circuit of Appeals has adopted a standard outlining the level of specificity required in

prison grievances, namely, that when a prison's grievance procedures are silent or incomplete as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (concerning application of the Prisoner Litigation Reform Act in a suit pursuant to 42 U.S.C. § 1983).  The court noted that a grievance need not include legal terminology, legal theories, or even every fact necessary to prove each element of an eventual legal claim, but rather must only perform a grievance's primary purpose of alerting the prison to a problem and facilitating its resolution.  Id.

Under this standard, Petitioner's generalized complaint concerning failure to comply with program statements providing for institutional guidance concerning YCA programming did not serve to alert the BOP that Petitioner believed his projected release date had been incorrectly computed.  Petitioner even criticized an institutional response that had focused specifically on the calculation of his release date.  (Doc. 30-3, 2.)

Accordingly, it might be concluded that Petitioner has failed to exhaust his administrative remedies, and his petition may be dismissed.

IV.  Consideration of the Merits of the Petition

Alternatively, it might be concluded that Petitioner's initial efforts at exhaustion were sufficiently specific or that exhaustion of Petitioner's administrative remedies was excused because of futility based on the USPC's or BOP's reliance on BOP Program Statement 5880.30 (doc. 29, ¶¶ 18-19, att. 17) to compute Petitioner's mandatory release date.

7

If the merits of Petitioner's claim concerning miscalculation of his mandatory release date are considered, it appears Petitioner has not shown that the calculation of his mandatory release date was contrary to federal law.

Before its repeal subsequent to Petitioner's offense, 18 U.S.C. § 4206(d) provided in pertinent part, "Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served <u>two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term,</u> whichever is earlier...." (Emphasis added.)

Petitioner was sentenced in 1981 under the YCA, pursuant to which he might be released to the custody of the Attorney General and was eligible for forms of early supervised release at the end of his term. (Doc. 29-1, 2; 18 U.S.C. §§ 5010, 5017.) However, the intent of Congress after 1976 with respect to § 4206 was to render youthful offenders subject to the same standards of release as other offenders. <u>Benites v. United States Parole Commission</u>. 595 F.2d 518, 520 (9th Cir. 1979).

Further, federal regulatory law is consistent with Respondent's position. Although special, additional programming requirements might apply to YCA offenders, <u>see</u>, <u>e.g.</u>, 28 C.F.R. § 2.64, mandatory release of a YCA offender proceeds as with adults. Title 28 C.F.R. § 2.53 provides as follows:

(a) A prisoner (<u>including a prisoner sentenced under</u> the Narcotic Addict Rehabilitation Act, Federal Juvenile Delinquency Act, or <u>the provisions of 5010(c) of the Youth Corrections Act</u>) serving a term or terms of 5 years or longer shall be released on parole after completion

8

of <u>two-thirds of each consecutive term or terms or after
completion of 30 years of each term or terms of more than
45 years (including life terms),</u> whichever comes earlier,
unless pursuant to a hearing under this section, the
Commission determines that there is a reasonable
probability that the prisoner will commit any Federal,
State, or local crime or that the prisoner has frequently
or seriously violated the rules of the institution
in which he is confined. If parole is denied pursuant
to this section, such prisoner shall serve until the
expiration of his sentence less good time. (Emphasis added.)

28 C.F.R. § 2.53.

In sum, Petitioner has not pointed to any federal law that would render erroneous the calculation of his release date based on thirty (30) years for each of four (4) consecutive terms, for a total of 120 years.  The Court concludes that Petitioner has not shown his sentence is being executed in violation of federal law.

Accordingly, if the merits of the petition are considered, the petition should be denied.

V.   <u>No Certificate of Appealability Is Required</u>

A certificate of appealability is not required to appeal the denial of a petition under § 2241.  <u>Forde v. United States Parole Commission</u>, 114 F.3d 878, 879 (9th Cir. 1997).  This is based on the plain language of § 2253(c)(1), which does not require a certificate with respect to an order concerning federal custody because the detention complained of does not arise out of process issued by a state court.  <u>Id.</u>

VI.   <u>Disposition</u>

In accordance with the foregoing analysis, it is ORDERED that:

1) The petition for writ of habeas corpus is DENIED;

9

and

      2) The Clerk shall ENTER judgment for Respondent.

IT IS SO ORDERED.

  Dated:   **February 5, 2014**                     **/s/ Sheila K. Oberto**
                                             UNITED STATES MAGISTRATE JUDGE